## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**THE CHARTER OAK FIRE
INSURANCE COMPANY, as subrogee
of The Hinman Company**, a Connecticut
corporation,

        Plaintiff,

v

**CITY OF BATTLE CREEK,** a
Michigan municipal corporation, **ABM
INDUSTRY GROUPS, LLC**, a
Delaware corporation, **KURT
TRIBBETT**, an individual,
**CHRISTOPHER PRATT,** an
individual, and **RICHARD BOLEK,**
an individual,

        Defendants.

Case No. 24-cv-01125
Hon.

_____/

MICHELE A. CHAPNICK (P48716)
CORINNE F. SHOOP (P38145)
**GREGORY, MEYER & CHAPNICK,
P.C.**
Attorneys for Plaintiff
340 E. Big Beaver Road, Ste. 520
Troy, MI 48083
(248) 689-3920/(248) 689-4560 – Fax
mchapnick@gregorylaw.com
cshoop@gregorylaw.com

_____/

## COMPLAINT AND JURY DEMAND

    **NOW COMES** Plaintiff, The Charter Oak Fire Insurance Company, as

subrogee of The Hinman Company, by and through its attorneys, Gregory, Meyer & Chapnick P.C., and for its Complaint and Jury Demand, states as follows:

## JURISDICTIONAL ALLEGATIONS

1.      Plaintiff, The Charter Oak Fire Insurance Company ("Charter Oak") is organized under the laws of Connecticut, with its principal place of business in Hartford, Connecticut and is duly authorized to issue policies of insurance in the State of Michigan.

2.      Plaintiff is the subrogee of The Hinman Company for the damages caused by Defendant.

3.      Defendant City of Battle Creek ("City") is a Michigan municipal corporation that conducts business within Calhoun County, State of Michigan.

4.      Defendant ABM Industry Groups, LLC ("ABM"), is a Delaware limited liability company organized under the laws of the State of Delaware with its principal place of business in Sugarland, Texas. The sole member of the LLC is ABM Industries Incorporated, and its principal place of business is New York, New York. ABM is authorized to do business in the State of Michigan and conducts business in Calhoun County.

5.      Upon information and belief, Defendant Kurt Tribbett is a resident of the City of Battle Creek, Calhoun County, State of Michigan.

6.      Upon information and belief, Defendant Christopher Pratt is a resident

of the City of Battle Creek, Calhoun County, State of Michigan.

7.    Upon information and belief, Defendant Richard Bolek is a resident of the City of Battle Creek, Calhoun County, State of Michigan.

8.    Prior to December 28, 2022, Charter Oak issued a policy of property insurance bearing Policy Number Y-630-8H906272-COF-22 to The Hinman Company.

9.    The Charter Oak Policy provided insurance coverage for The Hinman Company's Covered Property located at 49-51 W. Michigan Avenue, Battle Creek, Michigan.

10.    Venue is appropriate in this judicial district under 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated here.

11.    Jurisdiction is proper in this Court under 28 U.S.C. 1332(a)(2) and 1332(b), because there is complete diversity between the parties and the amount in controversy exceeds $75,000.

## FACTS COMMON TO ALL COUNTS

12.    Plaintiff incorporates by reference paragraphs 1 through 11 of its Complaint as though fully set forth herein.

13.    Charter Oak insured property located at 49-51 W. Michigan Avenue,

Battle Creek, Michigan owned by Hinman ("subject property" or "Hinman building").

14.    The subject property was damaged by water on December 28, 2022.

15.    The subject property was adjacent to the Jackson Street parking structure.

16.    The Jackson Street parking structure is owned and controlled by the City of Battle Creek ("the City").

17.    From February 2021 to January 2022, the Jackson Street parking structure earned revenue of $4,400 a month on average and upon information and belief did not operate at a loss.

18.    Upon information and belief, at all times relevant herein, the City contracted with ABM to assist in the management and operation of the Jackson Street parking structure, including its components and systems.

19.    At all relevant times, the Jackson Street parking structure was a public building and was open for use by members of the public.

20.    The Jackson Street parking structure consisted of a surface lot and underground parking accessed by ramps.

21.    The lowest level of the subject Hinman Building was connected to the Jackson Street parking structure through a pedestrian entrance.

22.    For years prior to the loss, the Jackson Street structure had a dry pipe

fire suppression system that Defendants were obligated to service and maintain.

23.    From 2012 until 2023, neither ABM nor the City performed the code mandated service and maintenance required for the fire suppression system.

24.    On or about December 7, 2022, the air compressor that is an integral part of the fire suppression system was stolen from a mechanical room of the Jackson Street parking structure that upon information and belief Defendants left unsecured.

25.    As a result of the theft of the air compressor, the fire suppression system was depressurized on December 7, 2022, allowing the fire suppression lines to fill with water in the unheated structure, during one of the coldest months.

26.    Despite the fact that Defendants were aware that the compressor had been removed and despite the fact that Defendants knew or should have known that the fire suppression system lines filled with water, Defendants failed to inspect or service the fire suppression system, drain the lines, reset the system and perform code required service and maintenance on the system to eliminate the water from the lines to prevent the foreseeable freezing of the lines. This dangerous and defective condition remained until at least December 28, 2022 and thereafter.

27.    City official Tribbett has admitted that when the stolen air compressor was reinstalled in December 2022, neither he nor other City personnel knew that the compressor's purpose was to pressurize the fire protection system to keep water from entering the piping system.

28.    Tribbett also admitted that the fire suppression system's alarms were not rewired after the theft.

29.    On information and belief, Defendant the City and its personnel were aware that the fire suppression system in the Jackson Street parking structure was not adequately inspected or maintained and was filled with water at the time of the theft and remained in that dangerous and defective state for weeks.

30.    Defendants also knew or should have known that the Jackson Street parking structure had four sump pumps designed to carry away fugitive water within the structure but that at least two sump pumps in the structure's mechanical room had not functioned properly since 2020 and were not properly serviced and/or repaired for close to two years prior to the date of the subject loss.

31.    The City, as the owner of the parking structure and the dry pipe fire suppression system, is charged with knowledge of and responsibility to maintain the system pursuant to Michigan's State Construction Code, adopted by Battle Creek Ordinance § 1420.01; International Building Code (2015); the International Fire Code (2012); Michigan Fire Code; National Fire Protection Association ("NFPA") 25 (*Standard for the Inspection, Testing, and Maintenance of Water-Based Fire Protection Systems*) (2011).

32.    ABM, as the operator and manager of the parking structure and its dry pipe fire suppression system, is also charged with knowledge of and responsibility

to maintain the system pursuant to NFPA 25.

33.     After the theft, Defendants failed to take reasonable and necessary steps to inspect and drain the water in the dry pipe system and/or to prevent freezing and subsequent rupturing of the pipes in the fire suppression system.

34.     As admitted by Defendants, the structure's knowingly disabled sump pumps could not handle the release of water, allowing water to back up in the parking structure until it reached the door of the Hinman building that had ingress/egress to the lower level of the building.

35.     There were three claims made by owners of other properties adjacent to the Jackson Street Parking Structure arising out of the December 28, 2022 flooding event; Kellogg Community Credit Union, Battle Creek Unlimited and The Hinman property.

36.     The City of Battle Creek paid the Kellogg Community Credit Union $7,474.42 for its damage claim.

37.     On June 20, 2023, the City of Battle Creek, Board of Commissioners passed Resolution No. 183 wherein it agreed to pay Battle Creek Unlimited $60,572.27 for "water damage to its property at 50 W. Jackson Street incurred as a result of the 12/28/2022 flood."

38.     The Hinman property was damaged by the intrusion of water escaping from the improperly serviced and maintained fire suppression system at the Jackson

Street parking structure.

39.    Pursuant to its policy of insurance, Hinman made a claim to Charter Oak for the loss and damage caused by the freezing and rupturing of the fire suppression system.

40.    As required under the policy of insurance, Charter Oak made payment to or on behalf of Hinman in the amount of at least $202,393.95.

41.    The City of Jackson denied the claim made by and on behalf of Hinman Company for the damages it sustained as the result of the December 28, 2022 flood.

42.    Upon such payment, and under the terms and conditions of the Charter Oak Policy, and by operation of law, Plaintiff Charter Oak became subrogated to the rights, claims, and causes of action of its insured, Hinman Company against Defendants in the amount of its payments to date and any future payments.

<u>**COUNT I**</u>
**Against The City Pursuant to the Governmental Tort Liability Act
Under The Public Building Exception (MCL 691.1406 )**

43.    Plaintiff incorporates by reference paragraphs 1 through 38 of its Complaint as though fully set forth herein.

44.    The Jackson Street parking structure is a public building, open to the public.

45.    The Jackson Street parking structure was owned and/or controlled by the City.

46.    Defendant City of Battle Creek is a governmental agency with the obligation to repair and maintain the Jackson Street parking structure for use by members of the public.

47.    Pursuant to MCL 691.1406, The City owed the public the non-delegable statutory duty of maintaining and repairing the Jackson Street parking structure and its components to ensure that the public, including Charter Oak's insured, was not exposed to dangerous or defective conditions of which the City had actual or constructive knowledge.

48.    At all times relevant to this matter, by ordinance the City of Battle Creek adopted NFPA 25 (*Standard for the Inspection, Testing, and Maintenance of Water-Based Fire Protection Systems*).

49.    Under NFPA 25, The City is responsible for inspecting, testing, and maintaining the dry pipe fire protection system (NFPA 25, § 4.1).

50.    The City failed to comply with NFPA 25 in numerous respects by failing to have the fire suppression system inspected for over 10 years which is an egregious violation of NFPA 25.

51.    The City failed to comply with the Michigan Fire Code in numerous respects by failing to have a working audible alarm activated by the flow of water in the system.

52.    Contrary to NFPA 25, §5.4.2, the dry pipe fire suppression system was

left in a water filled state from the date of the theft and remained in that dangerous and defective condition until and the date of loss.

53.    The City had a duty to remedy the known dangerous, defective and hazardous conditions of the Jackson Street parking structure as described above.

54.    The City breached its duties, including, but not limited to:

    a.    Failing to timely and adequately maintain and service the fire suppression system in the parking structure in accordance with Michigan law, the Michigan State Construction Code; NFPA 25 (*Standard for the Inspection, Testing, and Maintenance of Water-Based Fire Protection Systems*)(2011); the International Building Code; and the Michigan Fire Code, which adopts NFPA 25 as the standard for inspection, testing, and maintenance of water-based fire protection systems.

    b.    Failing to hire qualified and knowledgeable fire suppression professionals to timely service and maintain the fire suppression system both before and after the theft.

    c.    Failing to repair and reinstall the water flow and low-pressure alarms and return them to functional and proper use.

    d.    Allowing unqualified and unknowledgeable personnel to work on the fire suppression system after the theft.

    e.    Failing to have the fire suppression system drained and reset after the theft to prevent freezing and rupturing of the lines.

    f.    Failing to have the fire suppression system monitored as required by NFPA 25.

    g.    Failing to comply with all of the requirements of NFPA 25 relating to the service and maintenance of the fire suppression system.

    h.    Failing to take steps to prevent thousands of gallons of water from being expelled and flow into and damage to Plaintiff's subrogor's property.

    i.    Failing to timely service and maintain the sump pumps and allowing them to remain inoperable for over two years.

    j.    Failing to remedy the dangerous and/or defective conditions within a reasonable period of time.

k.   Failing to instruct and/or warn the public, including the adjacent Hinman Building of the danger.

l.   Failing to take action reasonably necessary to protect the public, including Plaintiff's subrogor from the flow of water into its property.

m.   Failing to comply with Michigan law, including, but not limited to, Michigan's State Construction Code, the Michigan Fire Code, and NFPA 25.

n.   Failing to exercise any degree of vigilance for the protection of the public, including Plaintiff's subrogor.

o.   Failing to perform its duties in a workmanlike manner.

p.   Failing to take other and necessary precautions to prevent the dangerous and/or defective conditions and  damage to the property of Plaintiff's subrogor.

q.   Failing to properly train its employees and contractors.

r.   Failing to use reasonable care in the performance of duties, including, but not limited to, the maintenance and service of the parking structure and its mechanical components.

s.   Any other duties or obligations that become known through the course of this case.

55.    The City's acts and omissions created dangerous or defective conditions at the Jackson Street parking structure, including, but not limited to, its fire suppression system and sump pump system.

56.    The City had actual and/or constructive notice of the dangerous and/or defective conditions yet failed to take any action to remedy, repair or remove the dangerous and/or defective conditions and failed to take any action to protect the general public, or take action reasonably necessary to protect the public including Plaintiff's insured against the condition after a reasonable time.

57.    Plaintiff and its subrogor sustained damages as a result of the City's failure to remedy the dangerous and/or defective conditions described above within

a reasonable time.

58.    Plaintiff and its subrogor provided notice to the City within 60 days of the December 28, 2022 event.

59.    Because the damages suffered by Plaintiff arise out of Defendant's City of Battle Creek's failure to repair or maintain a public building, the City is not immune from liability under MCL 691.1406.

60.    Additionally, by making payment for this loss to other property owners, Defendant has waived reliance on and/or acknowledged that the Governmental Tort Liability Act does not apply to deny liability for Plaintiff's loss and damage.

**WHEREFORE**, Plaintiff Charter Oak demands judgment against the City in an amount in excess of $75,000 together with costs, interest, and attorney fees.

<u>**COUNT II**</u>
**Against The City Pursuant to the Governmental Tort Liability Act Under The Proprietary Function Exception (MCL 691.1413)**

61.    Plaintiff incorporates by reference paragraphs 1 through 55 of its Complaint as though fully set forth herein.

62.    The City owns and/or controls the Jackson Street parking structure and charges the public a fee for parking.

63.    The City was engaged in the performance of a proprietary function as the activities of the Jackson Street parking structure was conducted primarily for the purpose of producing a pecuniary profit and is not normally supported by taxes and

fees.

64.    The Jackson Street parking structure serves the needs of visitors frequenting Battle Creek's private businesses, including The Hinman building occupied by Plaintiff's subrogor.

65.    The operation of the Jackson Street parking structure does not facilitate the use of a public building.

66.    The City had a duty to remedy the known dangerous, defective and hazardous conditions of the Jackson Street parking structure as described above.

67.    The City breached its duties, including, but not limited to:

a.    Failing to timely and adequately maintain and service the fire suppression system in the parking structure in accordance with Michigan law, the Michigan State Construction Code; NFPA 25 (*Standard for the Inspection, Testing, and Maintenance of Water-Based Fire Protection Systems*)(2011); the International Building Code; and the Michigan Fire Code, which adopts NFPA 25 as the standard for inspection, testing, and maintenance of water-based fire protection systems.

b.    Failing to hire qualified and knowledgeable fire suppression professionals  to timely service and maintain the fire suppression system both before and after the theft.

c.    Failing to repair and reinstall the water flow and low-pressure alarms and return them to functional and proper use.

d.    Allowing unqualified and unknowledgeable personnel to work on the fire suppression system after the theft.

e.    Failing to have the fire suppression system drained and reset after the theft to prevent freezing and rupturing of the lines.

f.    Failing to have the fire suppression system monitored as required by NFPA 25.

g.    Failing to comply with all of the requirements of NFPA 25 relating to the service and maintenance of the fire suppression system.

h.      Failing to take steps to prevent thousands of gallons of water from being expelled and flow into and damage to Plaintiff's subrogor's property.

i.      Failing to timely service and maintain the sump pumps and allowing them to remain inoperable for over two years.

j.      Failing to remedy the dangerous and/or defective conditions within a reasonable period of time.

k.      Failing to instruct and/or warn the public, including the adjacent Hinman Building of the danger.

l.      Failing to take action reasonably necessary to protect the public, including Plaintiff's subrogor from the flow of water into its property.

m.      Failing to comply with Michigan law, including, but not limited to, Michigan's State Construction Code, the Michigan Fire Code, and NFPA 25.

n.      Failing to exercise any degree of vigilance for the protection of the public, including Plaintiff's subrogor.

o.      Failing to perform its duties in a workmanlike manner.

p.      Failing to take other and necessary precautions to prevent the dangerous and/or defective conditions and damage to the property of Plaintiff's subrogor.

q.      Failing to properly train its employees and contractors.

r.      Failing to use reasonable care in the performance of duties, including but not limited to, the maintenance and service of the parking structure and its mechanical components.

s.      Any other duties or obligations that become known through the course of this case.

68.     The City's breach of its duties caused damage to Plaintiff and its subrogor.

69.     Plaintiff provided notice to the City within 60 days of the December 28, 2022 event.

70.     Because the damages suffered by Plaintiff arose out of performance of a proprietary function by the City of Battle Creek, the City is not immune from

liability under MCL 691.1413.

71.     Additionally, by making payment for this loss to other property owners, Defendant has waived reliance on and/or acknowledged that the Governmental Tort Liability Act does not apply to deny liability for Plaintiff's loss and damage.

**WHEREFORE**, Plaintiff Charter Oak demands judgment against the City in an amount in excess of $75,000 together with costs, interest, and attorney fees.

### COUNT III
### Gross Negligence against the City

72.     Plaintiff incorporates by reference paragraphs 1 through 65 of its Complaint as though fully set forth herein.

73.     At all times relevant herein, the City and its employees were under a duty to operate, maintain, perform service, repairs, and maintenance to the Jackson Street parking structure and was under a duty to use due care and caution for the safety of person and property in performing its work in a good and workmanlike manner in accordance with all applicable practices, requirements, ordinances, statutes, regulations, codes, standards and laws, including the safe provision of services, materials and equipment.

74.     At all times relevant herein, Defendant the City was under a further duty to exercise reasonable care for the safety of adjacent property owners like Hinman.

75.     In violation of said duties, the City was reckless, willful, wanton and/or

grossly negligent through the following acts and/or omissions:

a.   Failing to maintain, service and repair the Jackson Street parking structure including its fire suppression system and sumps in accordance with Michigan law, the Michigan State Construction Code; NFPA 25 (*Standard for the Inspection, Testing, and Maintenance of Water-Based Fire Protection Systems*) (2011); the International Building Code; and the Michigan Fire Code, which adopts NFPA 25.

b.   Allowing the fire suppression system (a life-safety device) to knowingly remain in a dangerous and defective condition.

c.   Failing to hire qualified and knowledgeable fire suppression professionals to timely service and maintain the fire suppression system both before and after the theft.

d.   Failing to repair and reinstall the water flow and low-pressure alarms and return them to functional and proper use.

e.   Allowing knowingly unqualified and unknowledgeable personnel to work on the fire suppression system after the theft.

f.   Failing to have the fire suppression system drained and reset after the theft to prevent freezing and rupturing of the lines.

g.   Failing to have the fire suppression system monitored as required by NFPA 25.

h.   Failing to comply with all of the requirements of NFPA 25.

i.   Failing to take reasonable and necessary steps to prevent thousands of gallons of water from being expelled and flow into Plaintiff's subrogor's property.

j.   Failing to timely service and maintain the sump pumps and knowingly allowing them to remain inoperable for over two years.

k.   Failing to remedy the dangerous and/or defective conditions within a reasonable period of time.

l.   Failing to instruct and/or warn the public including the adjacent Hinman Building of the danger.

m.   Failing to take action reasonably necessary to protect the public, including Plaintiff's subrogor from the flow of water into its property.

n.   Failing to comply with Michigan law, including, but not limited to, Michigan's State Construction Code, the Michigan Fire Code, and NFPA 25.

o.   Failing to exercise any degree of vigilance for the protection of

the public, including Plaintiff's subrogor.

p.   Failing to perform its duties in a workmanlike manner.

q.   Failing to take other and necessary precautions to prevent the dangerous and/or defective conditions and  damage to the property of Plaintiff's subrogor.

r.   Failing to properly train its employees and contractors.

s.   Failing to use reasonable care in the performance of duties, including, but not limited to, the maintenance and service of the parking structure and its mechanical components.

t.   Any other duties or obligations that become known through the course of this case.

76.   The City's conduct was so reckless that it demonstrated a substantial lack of concern for whether an injury might occur to the public.

77.   The City's reckless conduct constitutes gross negligence.

78.   The City's reckless conduct was the most immediate, efficient, and direct cause of the damages to Plaintiff's insured.

79.   As a direct and proximate result of the City's reckless, grossly negligent, wanton and/or willful misconduct of Defendant City of Battle Creek, Plaintiff's insured suffered significant damages as described above.

80.   Additionally, by making payment for this loss to other property owners, Defendant has waived its right to deny liability for Plaintiff's loss and damage.

**WHEREFORE**, Plaintiff Charter Oak demands judgment against the City in an amount in excess of $75,000 together with costs, interest, and attorney fees.

## COUNT IV

**Against Battle Creek Employees Kurt Tribbett, Chrisopher Pratt, Richard Bolek, and Rebecca Fleury for Negligence and/or Gross Negligence under MCL 691.1407**

81.    Plaintiff incorporates by reference paragraphs 1 through 73 of its Complaint as though fully set forth herein.

82.    At all times relevant, Tribbett was employed by the City of Battle Creek as the engineering administrator for the City's Department of Public Works.

83.    At all times relevant, Pratt was employed by the City of Battle Creek as the Maintenance Group Supervisor for the Wastewater Department.

84.    At all times relevant, Bolek was employed by the City of Battle Creek as the Chief Building Official.

85.    Tribbett, Pratt and Bolek owed legal duties to the public related to the operation of the Jackson Street parking structure.

86.    Tribbett, Pratt and Bolek breached or violated their duties to the public which included Plaintiff's subrogor in the following respects:

      a.    Failing to timely and adequately maintain and service the fire suppression system in the parking structure in accordance with Michigan law, the Michigan State Construction Code; NFPA 25 (*Standard for the Inspection, Testing, and Maintenance of Water-Based Fire Protection Systems*)(2011); the International Building Code; and the Michigan Fire Code, which adopts NFPA 25 as the standard for inspection, testing, and maintenance of water-based fire protection systems.

      b.    Failing to hire qualified and knowledgeable fire suppression professionals  to timely service and maintain the fire suppression system both before and after the theft.

c.     Failing to repair and reinstall the water flow and low-pressure alarms and return them to functional and proper use.

d.     Allowing unqualified and unknowledgeable personnel to work on the fire suppression system after the theft.

e.     Failing to have the fire suppression system drained and reset after the theft to prevent freezing and rupturing of the lines.

f.     Failing to have the fire suppression system monitored as required by NFPA 25.

g.     Failing to comply with all of the requirements of NFPA 25 relating to the service and maintenance of the fire suppression system.

h.     Failing to take steps to prevent thousands of gallons of water from being expelled and flow into and on Plaintiff's subrogor's property.

i.     Failing to timely service and maintain the sump pumps and allowing them to remain inoperable for over two years.

j.     Failing to remedy the dangerous and/or defective conditions within a reasonable period of time.

k.     Failing to instruct and/or warn the public including the adjacent Hinman Building of the danger.

l.     Failing to take action reasonably necessary to protect the public, including Plaintiff's subrogor from the flow of water into its property.

m.    Failing to comply with Michigan law, including, but not limited to, Michigan's State Construction Code, the Michigan Fire Code, and NFPA 25.

n.     Failing to exercise any degree of vigilance for the protection of the public, including Plaintiff's subrogor.

o.     Failing to perform its duties in a workmanlike manner.

p.     Failing to take other and necessary precautions to prevent the dangerous and/or defective conditions and  damage to the property of Plaintiff's subrogor.

q.     Failing to properly train its employees and contractors.

r.     Failing to use reasonable care in the performance of duties, including, but not limited to, the maintenance and service of the parking structure and its mechanical components.

s.     Any other duties or obligations that become known through the course of this case.

87.    Tribbett's, Pratt's and Bolek's conduct was so reckless that it

demonstrated a substantial lack of concern for whether an injury might occur to the public.

88.    Tribbett's, Pratt's and Bolek's reckless conduct constitutes negligence and/or gross negligence.

89.    Tribbett's, Pratt's and Bolek's reckless conduct was the most immediate, efficient, and direct cause of the damages to Plaintiff's insured.

90.    Tribbett's, Pratt's and Bolek's grossly negligent conduct was the proximate cause of the damages to the property of Plaintiff's insured.

91.    Because the damages suffered by Plaintiff arose out of Tribbett's, Pratt's and Bolek's negligent and/or grossly negligent conduct, Tribbett, Pratt, Bolek, and Fleury are not immune from liability under MCL 691.1407.

**WHEREFORE**, Plaintiff Charter Oak demands judgment against City employees Tribbett, Pratt and Bolek, in an amount in excess of $75,000 together with costs, interest, and attorney fees.

## COUNT V
**Against ABM Industries for Negligence and/or Gross Negligence**

92.    Plaintiff incorporates by reference paragraphs 1 through 84 of its Complaint as though fully set forth herein.

93.    At all relevant times, ABM was responsible for operating and maintaining the Jackson Street parking structure.

94.    As the party obligated to operate and maintain the parking structure,

ABM was under a duty to use due care and caution for the safety of persons and property in performing its work in a good and workmanlike manner in accordance with all applicable practices, requirements, ordinances, statutes, regulations, codes, and standards, including the safe provision of services, materials and equipment to properly maintain the structure and its systems.

95.     At all times relevant herein, Defendant ABM was under a further duty to exercise reasonable care for the safety of adjacent property owners.

96.     In violation of said duties, ABM was negligent and/or grossly negligent through the following acts and/or omissions:

    a.    Failing to timely and adequately maintain and service the fire suppression system in the parking structure in accordance with Michigan law, the Michigan State Construction Code; NFPA 25 (*Standard for the Inspection, Testing, and Maintenance of Water-Based Fire Protection Systems*)(2011); the International Building Code; and the Michigan Fire Code, which adopts NFPA 25 as the standard for inspection, testing, and maintenance of water-based fire protection systems.

    b.    Failing to hire  qualified and knowledgeable fire suppression professionals to service and maintain the fire suppression system and sump pumps both before and after the loss

    c.    Failing to  repair and reinstall the water flow and low-pressure alarms and return them to functional and proper use.

    d.    Allowing unqualified and unknowledgeable personnel to work on the fire suppression system after the theft.

    e.    Failing to have the fire suppression system drained and reset after the theft to prevent freezing and rupturing of the lines.

    f.    Failing to have the fire suppression system monitored as required by NFPA 25.

    g.    Failing to comply with all of the requirements of NFPA 25 relating to the service and maintenance of the fire suppression system.

h.   Failing to take steps to prevent thousands of gallons of water from being expelled and flow into Plaintiff's subrogor's property.

i.   Failing to timely service and maintain the sump pumps and allowing them to remain inoperable for over two years.

j.   Failing to remedy the dangerous and/or defective conditions within a reasonable period of time.

k.   Failing to instruct and/or warn the public including the adjacent Hinman Building of the danger.

l.   Failing to take action reasonably necessary to protect the public, including Plaintiff's subrogor from the flow of water into its property.

m.   Failing to comply with Michigan law, including, but not limited to, Michigan's State Construction Code, the Michigan Fire Code, and NFPA 25.

n.   Failing to exercise any degree of vigilance for the protection of the public, including Plaintiff's subrogor.

o.   Failing to perform its duties in a workmanlike manner.

p.   Failing to take other and necessary precautions to prevent the dangerous and/or defective conditions and  damage to the property of Plaintiff's subrogor.

q.   Failing to properly train its employees and contractors.

r.   Failing to use reasonable care in the performance of duties including, but not limited to, the maintenance and service of the parking structure and its mechanical components

s.   Any other duties or obligations that become known through the course of this case.

97.   As a direct, proximate result of Defendant ABM's negligent and/or grossly negligent acts and/or omissions, Plaintiff and its subrogor suffered losses and damages, including damage to real and personal property as alleged above.

**WHEREFORE**, Plaintiff Charter Oak demands judgment against the City in an amount in excess of $75,000 together with costs, interest, and attorney fees.

## <u>JURY DEMAND</u>

**NOW COMES** Plaintiff, The Charter Oak Fire Insurance Company, by and through its counsel, Gregory, Meyer & Chapnick, P.C., and hereby demands trial by jury on all issues so triable.

Respectfully submitted,

<u>/s/ Michele A. Chapnick</u>
MICHELE A. CHAPNICK (P48716)
**GREGORY, MEYER & CHAPNICK, P.C.**
Attorneys for Plaintiff
340 E. Big Beaver Road, Ste. 520
Troy, MI 48083
(248) 689-3920/(248) 689-4560 -Fax
mchapnick@gregorylaw.com

and

<u>/s/ Corinne F. Shoop</u>
CORINNE F. SHOOP (P38145)
**GREGORY, MEYER & CHAPNICK, P.C.**
Attorneys for Plaintiff
340 E. Big Beaver Road, Ste. 520
Troy, MI 48083
(248) 689-3920/(248) 689-4560 -Fax

Dated: October 28, 2024          cshoop@gregorylaw.com